FRANK RATTO, Doing Business as MERIDIAN SHIPPING & TRADING Co., Plaintiff, *v.* ITALIA-FLOTTE RIUNITE COSULICH-LLOYD SABAUDO-NAVIGAZIONE GENERALE — COSULICH SOCIETA TRIESTINA DI NAVIGAZIONE-LLOYD TRIESTINO, Also Known as ITALIAN LINE, Defendant.*

City Court of New York, Trial Term, New York County, June 24, 1938.

*Abraham J. Rosenblum,* for the plaintiff.

*Kirlin, Campbell, Hickox, Keating & McGrann* [*Michael F. Whalen* of counsel], for the defendant.

SCHIMMEL, J. This action was tried before the court without a jury. The plaintiff seeks to recover a sum certain representing a loss which he allegedly sustained by reason of the failure of the defendant, a steamship corporation organized under the laws of the Kingdom of Italy, to honor a levy made by the sheriff of New

---

* Affd., Supreme Court, Appellate Term, First Department, May 24, 1939.

York county pursuant to a warrant of attachment issued out of the Supreme Court, New York county.

The facts are as follows: This plaintiff had instituted an action in the Supreme Court, New York county, against a corporation organized under the laws of Italy and known as Societa Anonima Commercio Prodotti Agricoli. A warrant of attachment was issued in that action covering imports consisting of figs, olive oil and carobs, brought from Italy on one of the vessels of the defendant at bar, Cosulich Societa Triestina di Navigazione, which company, for brevity, will be hereinafter called the Italian Line. When the sheriff of New York county attempted to execute the attachment, the property in question had already arrived and was then at Pier 97, North river, in the custody of the United States customs officials. Some part of the goods was dutiable but no duty had as yet been paid; the remainder of the goods was duty-free. Apparently there had been no segregation when a deputy sheriff undertook to make the levy; practically speaking, all of the goods were at that time in the custody of United States customs guards. The deputy sheriff seemingly made no attempt to seize the goods as such, or even to locate them, but repaired instead to the office of the defendant at 1 to 5 State street, New York city, where, at approximately three o'clock in the afternoon of December 7, 1934, he served a certified copy of the warrant of attachment, together with a notice describing the goods attached, upon one Cacciarella, who was the manager of the west-bound freight department of the Italian Line. At the time of this service there was outstanding a negotiable order bill of lading, which was not then surrendered or delivered to the Italian Line. However, such negotiable order bill of lading came into the possession of the aforementioned Cacciarella not later than five o'clock of the same afternoon. The court finds from the evidence adduced before it that this bill of lading was surrendered to the Italian Line by a representative of the Victory Shipping Co., Inc., a custom broker employed by and acting for the aforementioned Societa Anonima Commercio Prodotti Agricoli, the defendant in the attachment suit. The court further finds that the aforementioned goods were then the property of the said defendant in the attachment suit.

Cacciarella was, in the opinion of the court, a proper person to be served with the warrant of attachment and notice describing the property. He was the person who received and took charge of the bill of lading when it did come in and he was also the person who had charge of the attached property. After he was served with the attachment papers, Cacciarella consulted with the lawyers for his employer, the Italian Line, and undertook to investigate

and determine for himself the ownership of the goods. He did not apply to any superior officer for instructions. Apparently as a result of his investigation he reached the conclusion that the Societa Anonima Commercio Prodotti Agricoli was not the owner of the goods, but that they belonged to a third party, to whom he caused them to be delivered, in disregard of the attachment. All other employees of the Italian Line having anything to do with the goods were responsible to and took their orders from Cacciarella.

The attachment suit of plaintiff came to judgment; judgment was entered therein against the Societa Anonima Commercio Prodotti Agricoli, which had defaulted, in the sum of $1,440.43. Execution upon the judgment was returned unsatisfied and the judgment has not been paid. In the present action plaintiff seeks to recover against the Italian Line the amount of this unsatisfied judgment. If the Italian Line had honored the attachment, the judgment would have been satisfied, for the evidence shows that the value of the imported goods was greatly in excess of the amount of the attachment and of the judgment entered in the attachment suit.

The action as such is properly maintainable. (*Castriotis* v. *Guaranty Trust Co.*, 229 N. Y. 74.)

The only question in the case is whether the levy, by service of the warrant of attachment and notice describing the property, was effective notwithstanding the fact that the sheriff did not take the goods into his possession and notwithstanding the further fact that at the time the levy was made the outstanding negotiable order bill of lading covering the goods had not been surrendered to the carrier or its negotiation enjoined as required by section 210 of the Personal Property Law.

The levy was made according to the method prescribed in subdivision 3 of section 917 of the Civil Practice Act; it was a sufficient levy, for the goods could not have been seized by the sheriff. They were in the possession of the customs officials and they were not then " capable of manual delivery," so that the deputy sheriff did all that he could reasonably be required to do to effectuate the levy. (*Coldberg* v. *Emerson*, 23 Civ. Proc. Rep. 337; 30 N. Y. Supp. 146, ANDREWS, J.) It is argued for the defendant that the sheriff might have seized that portion of the goods which was not dutiable. However, it is a fair inference from the testimony that the dutiable goods exceeded in value the amount of the attachment and, in any event, as hereinabove indicated, all of the goods were still in the possession of the customs guards, no duty had as yet been paid, and no segregation had been made. Furthermore, even if it had been able to do so, the Italian Line would certainly

not then have surrendered or been required to surrender the goods to the sheriff, in view of the fact that there was outstanding the negotiable order bill of lading. (Cf. *Clements* v. *Doblin*, 209 App. Div. 208; affd., 239 N. Y. 526; *Dugundji* v. *Paico*, 190 App. Div. 707.) Also, it may be thought that, in the light of section 210 of the Personal Property Law, a seizure of the goods would not be necessary as the bill of lading rather than the goods constituted the *res* upon which the levy was effectuated. (*Brimberg* v. *Hartenfeld Bag Co.*, 89 N. J. Eq. 425; 105 A. 68.)

The principal contention of the defendant here is that no proper levy was made because at the time of the levy the bill of lading was not in the possession of the defendant carrier. It came into the latter's possession on the same afternoon but about two hours later, when it was surrendered by the customs broker, as this court has found, on behalf and by the authority of the defendant in the attachment suit.

Section 210 of the Personal Property Law, which is the statute to be considered, has its counterpart in the Federal Bills of Lading Act (U. S. Code, tit. 49, § 103). (See, also, Uniform Bills of Lading Act, § 24.) Section 120 of the Personal Property Law, relating to goods in the possession of a bailee for which a negotiable document has been issued, and section 110 of the General Business Law, relating to goods in the possession of a warehouseman covered by a negotiable receipt, are cognate statutes.

The pertinent requirement of section 210 of the Personal Property Law that if a negotiable bill of lading is outstanding the goods cannot be levied upon " unless the bill be first surrendered to the carrier or its negotiation enjoined," was placed there for a practical purpose. This is explained in the following commissioners' note respecting section 24 of the Uniform Bills of Lading Act: " If the mercantile theory of documents of title, such as bills of lading and warehouse receipts, were carried to its logical extent, no attachment of the goods represented by the document or levy upon them could be permitted while the negotiable document was outstanding. For the mercantile theory proceeds upon the assumption that a negotiable document of title represents the goods and may be safely dealt with on that assumption. For one and the same reason the law cannot permit the bailee to deliver the goods without taking up an outstanding negotiable receipt for them, or allow attachment or levy upon the goods, when they are represented by outstanding negotiable documents."

An attachment, of course, speaks only as of the time the levy is made. Nevertheless, the court has reached the conclusion that in the situation here presented the levy was effective although

the bill of lading was not surrendered to the carrier until approximately two hours after the service of the warrant of attachment and of the notice describing the property. It is as if the service of these papers and the surrender of the bill of lading were effected simultaneously and the intervening fraction of a day is to be disregarded. (Cf. *Hughes* v. *Patton*, 12 Wend. 234; *Rusk* v. *Van Benschoten*, 1 How. Pr. 149.) The surrender of the bill of lading and the service of the warrant of attachment are not ceremonies, to be ritualistically performed, in that order. True, the service of the warrant and the surrender of the bill of lading should be at least concurrent, but, for all practical purposes, they were concurrent here. Surely no one would suppose that a levy would ordinarily be ineffective if the bill of lading were delivered five minutes after the sheriff served the warrant. The period of two hours which intervened here made no practical difference. The goods were in the same place at five o'clock in the afternoon in which they were at three o'clock, the relationship of the parties to the goods had not changed and no rights of third parties had intervened.

To summarize: The sheriff could not have actually seized the goods at three o'clock in the afternoon, for the following reasons: (1) The goods were then in the possession of the customs officials; (2) there was an outstanding negotiable order bill of lading. He could, nevertheless, and did, make a levy in the manner prescribed in subdivision 3 of section 917 of the Civil Practice Act. But that levy was not complete without surrender to the defendant carrier of the bill of lading. The surrender, when it occurred, was practically and reasonably coincidental with the service of the warrant of attachment, and the levy was thus made perfect.

Judgment may be entered in favor of the plaintiff and against the defendant Italian Line, Cosulich Societa Triestina Di Navigazione, in the sum of $1,440.43, with interest thereon from October 22, 1935, the date of the entry of the judgment in the attachment suit, together with taxable costs and disbursements.