O. Lynn SHURTLEFF, Plaintiff,

v.

Harold HUBER, Louis L. Coover, Walter N. George, Anthony R. Tyrone, David J. Sikes, James E. Stokes and Hamilton Management Corporation, Defendants.

United States District Court
S. D. New York.
Aug. 30, 1960.

Gordon, Brady, Caffrey & Keller, New York City, for plaintiff. Leroy C. Curtis, and Jay R. Handwerger, New York City, of counsel.

Cole, Grimes, Friedman & Deitz, New York City, for defendants Harold Huber, Louis L. Coover, Walter N. George, David J. Sikes and Hamilton Management Corporation. Neef, Swanson & Myer, Denver, Colo., of counsel.

Hale, Kay & Grant, New York City, for defendant, James E. Stokes.

THOMAS F. MURPHY, District Judge.

Plaintiff instituted this action in the Supreme Court of the State of New York against defendants, six non-resident selling stockholders and their company, a Delaware corporation, inter alia, for breach of contract. Defendants removed the action to this court on grounds of diversity of citizenship and thereafter moved to vacate certain warrants of attachment secured by plaintiff from the Supreme Court, New York County, on May 17, 1960, against the property of each defendant named in an amount up to $40,000, and served on Kidder, Peabody & Co. (Kidder) by the New York County Sheriff on May 18, 1960, purportedly attaching a debt owed by Kidder to defendants. On May 27, 1960, Kidder executed seven identical certificates in which it certified that at the time when the sheriff levied on May 18, 1960, and also on May 27, 1960, it did not have any money or property of the defendants and was not indebted to defendants in any amount or on account of any contract or otherwise.

 The issue presented is whether at the time of the service of the warrants of attachment on a partner of Kidder, defendants had an actionable claim against Kidder, then due, or certain to become due which could be the subject of attachment. Resolution of this difficult question, novel in the setting in which it arises, depends upon the facts to follow, adduced at a hearing held herein and from the papers and documents submitted on the motions. On May 10, 1960, Kidder entered into an agreement with defendants, by the terms of which Kidder agreed for itself and some 30 co-underwriters to purchase 320,000 shares of stock of Hamilton Management Corporation from the six selling stockholders for the sum of $3,424,000, said sum to be paid at the closing which was to take place at 10 a. m. on May 18, 1960, in the Newark, New Jersey, office of Kidder. After execution of the agreement, Kidder published a prospectus also dated May 10, 1960, and the following day commenced the public offering of the shares with ads in the New York Times and other publications. Between May 11th and May 18th the 320,000 shares of Hamilton Management Corporation stock were sold to the public for $3,680,000, subject to receipt and acceptance of the stock by the underwriters. On May 18, 1960, by 10 a. m., Kidder had received all the checks from all of the co-underwriters representing the respective amounts of the purchase price of the 320,000 shares of stock of Hamilton Management Corporation.

Relying on the underwriting agreement, the closing date of the transaction would be May 18, 1960, at 10 a. m. Plaintiff caused the sheriff to be at the office of Kidder, 17 Wall Street, New York City, at about 10:05 that morning, for the purpose of serving the certified copies of the warrants of attachment. After some delay the warrants were served on a partner of Kidder at about 10:40 a. m.

On May 17, 1960, the day before, all of the necessary papers (except two) were preliminarily examined by representatives of the parties at the offices of Sullivan & Cromwell, counsel for Kidder, and found to be in order, sealed and placed in the custody of Kidder overnight. The two documents that were yet to be received were telegrams from the Secretary of State of Delaware and the Securities & Exchange Commission, which incidentally were received by Kidder after 5 p. m. on May 17th, and were examined by counsel for all of the interested

parties in the office of Kidder on May 18th before 10 a. m. and found to be in order.

Defendants claim that the closing was adjourned to 11 a. m. on May 18, 1960, and offered testimony to support this. We find as a fact that at a luncheon meeting on May 17, 1960, after the pre-closing inspection and sealing of documents, counsel for Kidder, the attorney for the selling stockholders, two representatives of Kidder and one of the selling stockholders were present. Mr. Austin of Kidder requested as a matter of convenience to his company that the closing be postponed until 11 a. m., and such request was granted and joyfully accepted. On the afternoon of May 17th the stock certificates that were to be transferred were examined as to name and amount and all were found to be in order and left with the Chase Bank, which was acting as custodian. Whether the bank was told that its presence and the certificates were not necessary in Newark the next day until 11 o'clock does not appear, or whether it arrived there at 10 o'clock was not shown. There was no testimony either that notice of the one-hour adjournment was given and accepted by the other five selling stockholders or Hamilton Management Corporation. In any event the adjournment was not reduced to writing.

What was established was that before 10 a. m. on May 18, 1960, in the office of Kidder, its counsel and counsel for, and two of, the selling stockholders were all present looking at papers and at least examining the telegrams from the Secretary of State of Delaware and the Securities & Exchange Commission. It was established also that Kidder had sent telegrams to all of the co-underwriters asking that their checks be in Kidder's hands by 8:45 a. m. on May 18th, instead of 9:30 a. m. the time originally set, and that they were actually received by 10 a. m. It was established also that Kidder had drawn its check and had it certified in the amount of $3,424,000, and such check was in the possession of one of its employees while on his way to Newark at the time of service of the warrants of attachment. Two of plaintiff's associate counsel accompanied the sheriff to the office of Kidder that morning and it was their testimony that shortly after 11 a. m. one of the partners, and counsel for Kidder, told them that the closing was in progress in Newark, New Jersey. The partner, by deposition, thought it certain that he made no such statement, and counsel for Kidder denied making it, in his testimony on the hearing.

The physical act of exchanging the certificates for Kidder's check did not in fact take place until sometime in the afternoon of May 18, 1960, the delay being attributed wholly to the exigencies created by the service of the warrants. At that time Kidder withheld from the proceeds of the sale an amount of $42,000 from each of the individual defendants, which amounts were placed in escrow accounts set up by Kidder to be paid over to the defendants after the warrants were vacated, satisfied or otherwise discharged. These defendants also agreed in writing to indemnify Kidder for any costs, expenses or damages occasioned to it by the warrants of attachment. These funds were thereafter on May 27, 1960, transferred to escrow accounts in a Colorado bank where they stand as security for Kidder in the event that plaintiff succeeds in enforcing the levy under the warrants.

Defendants originally took the position that they did not have any cause of action against Kidder, Peabody & Co. until the exact time of the closing, 11 a. m. on May 18, 1960. This was modified subsequently in their brief submitted at the hearing to the effect that "Absent this litigation, any other litigation, or the non-performance of any other condition or representation or warranty to be performed by the selling stockholders, and if the parties had fully performed and were ready to exchange their papers at the Closing, an obligation probably would have arisen at the precise time of the Closing Date, 11:00 a. m." At the conclusion of the hearing their final position was stated to

be that their claim against Kidder came into existence only at the very instant when the shares of stock were physically handed over to Kidder, and the latter handed over its check in payment therefor.

We find, after consideration of all the evidence, that the levy by the sheriff was effective to attach a valid debt or actionable claim then due or certain to become due at the time of service of the warrants, in favor of defendants against Kidder, Peabody & Co., and that the motions to vacate must accordingly be denied. We reach this conclusion by finding that there was no real or valid adjournment of the "Closing Date" from 10 a. m. to 11 a. m. of the morning of May 18, 1960, and that by 10 a. m. of that day both, defendants and Kidder, Peabody & Co. on behalf of the underwriters, were ready, willing and able to perform; that all the conditions to be performed by defendants were in fact performed, and all the required documents and instruments whose delivery depended on defendants were prepared, ready for delivery and accurate. Kidder's obligation to defendants was not contingent upon future performance by them. Cf. Sheehy v. Madison Square Garden Corp., 266 N.Y. 44, 193 N.E. 633.

There was an informal agreement among those present at the luncheon on May 17th, in a relaxed, friendly atmosphere to postpone the physical act of exchanging the previously inspected and passed closing documents, and the certificates, for the underwriters' check, in Newark, until 11 a. m. (The purpose in making the exchange in New Jersey concededly was to avoid the New York State transfer tax.) The reason for the proposed time change was for the convenience of Kidder, Peabody & Co. so that its accounting office would have the additional time if need be, to consolidate all of the co-underwriters' checks into one, for delivery at the closing—to make performance by Kidder, Peabody a little more convenient. But there was no manifest intent to alter the binding terms of the underwriting agreement by which the rights of the parties were to accrue as

of 10 a. m. on May 18, 1960. It did not affect a postponement of the actionable claim that defendants had at 10 o'clock the morning of the 18th, at which time objectively, all of the conditions on their part to be performed were so performed. Furthermore, it is doubtful, that if such were the intent of those present at the luncheon, including the attorney for the individual defendants and counsel for Kidder, Peabody & Co., that such a postponement would not be reduced to a writing, which the agreement specifies as the manner of effecting a change in the "Closing Date." And it is further doubtful whether such a change could be effected without the consent of the Hamilton Management Corporation, the only party mentioned in the agreement together with Kidder, Peabody & Co. who must agree to an adjournment of time or date of closing. It does not appear that any representative of that company with authority to act on its behalf in this matter was present at the luncheon to give such consent. It is significant also to note that no mention of an adjourned time for closing was made in a memorandum of the closing prepared by counsel for Kidder, Peabody & Co. who explained that he was not cognizant that the time element would be material, though he was fully aware of the service of the warrants of attachment on the morning of the 18th, and it appears now that such time factor was of decisive importance in the minds of the parties to the agreement in continuing to close. Concluding, as we have, that the "Closing Date" remained for all legal purposes as 10 a. m., May 18, 1960, we are inclined to accept the position originally taken by defendants, that at that time Kidder, Peabody & Co. became indebted to them, or stated otherwise, they had an actionable claim against such company then due or certain to become due which could be levied upon by plaintiff. The only condition that had not been fulfilled by defendants at that time had in effect been waived by Kidder as a condition of the closing. That related to a supplemental opinion required by Kidder from defendants' counsel, Mr.

A. Stuard Young, with respect to shares of certain classes of stock of the corporate defendant then outstanding as being lawfully issued, fully paid and non-assessable. Kidder was aware that Mr. Young was ill, and proceeded on the understanding that the required opinion would not be tendered at the closing, but would be sometime thereafter. It was in fact submitted on June 23, 1960.

Even if we assume that the closing time had effectually been adjourned to 11 a. m., still we would reach the same conclusion for we are persuaded by the forceful argument of plaintiff that the condition or warranty in paragraph 2(e) of the agreement to the effect that at the time of closing no action is or will be pending to which the Hamilton Management Corporation is a party "which might result in any material adverse change in the condition (financial or other), business or prospects of the Company * * * or might materially and adversely affect the properties or assets thereof," is at best a condition subsequent to an otherwise binding and enforceable agreement. This is the only condition or warranty that may colorably be argued to have been breached by defendants, and it was solely because of the institution of this action that any additional papers or documents were executed, or modifications made (relating principally to withholding amounts sufficient to satisfy the warrants and indemnification of Kidder) for the consummation of the sale which then took place. The actions taken by Kidder after execution of the agreement lend considerable weight to the contention that the agreement was a binding and enforceable one, and in reliance thereon the underwriters had advertised and sold all of the stock to the public within a week after its execution. Certainly the agreement was binding upon defendants who could be obliged to perform or respond in damages to Kidder who was free to elect to waive any non-performance of conditions or breaches of warranty by defendants. In this light it is more reasonable to construe a breach of warranty by the selling stockholders as conditioning Kidder's right to terminate its obligation under the agreement; not as a condition precedent to Kidder's obligation as defendants argue. If upon the alleged breach of warranty, as, e. g., in this case the warranty relating to the pendency of litigation against the corporation, the underwriters elected to terminate, they might themselves have been subject to damages in a suit for breach of contract by the selling stockholders if the litigation against the corporation and the individual stockholders were found by the triers of the facts therein not to be such that entitled the underwriters to terminate, i. e., not such as "might result in any material adverse change in the condition (financial or other), business or prospects of the Company * * * or might materially and adversely affect the properties or assets thereof." Construing the warranties as conditions subsequent, the obligation of the underwriters was absolute and enforceable at the time of the service of the warrants in this case, under the facts disclosed, and remained so, unless and until the underwriters validly elected to terminate. No such election was made here.

The obligation of Kidder, Peabody & Co. was such as to give rise to an actionable claim against it in favor of defendants, subject however to defeasance in the event that Kidder rightfully, and justifiably, nevertheless at its peril, elected to terminate in accordance with the provisions of paragraph 9(b) of the agreement. It may seem anomalous to term such an obligation as an absolute one, such as is required to render it attachable. Perhaps we are in effect recognizing an instance in which the law of attachment should bend slightly to embrace the reality of the situation presented. Compare the case of Ratto v. Italia, etc., 171 Misc. 426, 12 N.Y.S.2d 617, which in essence presented a situation where an attachment was held effective though it was at the time of levy subject to defeasance in the event the defendant-in-attachment had transferred a negotiable bill of lading covering the

attached goods, but which the said defendant nevertheless thereafter surrendered to the garnishee-carrier thereby perfecting the attachment. Here the levy was subject to being nullified by the garnishee's rightful election to terminate, though not exercised.

We do not pass upon the question of the materiality of the litigation to which the corporation here is a party, but note only that its resolution would by no means be clear from the material at hand. We note also that, notwithstanding this action's pendency (and in any event the real threat that an action might be brought against the corporation in Colorado if not sustainable here) Kidder decided to close—action on its part quite relevant to the issue of materiality.

Defendants' motions are denied.

These are orders. No settlements are necessary.